Samuel M. Lasser (SBN – 252754)
slasser@edelson.com
Rafey S. Balabanian*
rbalabanian@edelson.com
Alicia E. Hwang*
ahwang@edelson.com
EDELSON PC
329 Bryant Street
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

Christopher L. Dore*
cdore@edelson.com
Amir C. Missaghi*
amissaghi@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Pro hac vice admission to be sought

Attorneys for Plaintiff and the Putative Class

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| PALMA REED, individually and on behalf of all others similarly situated, | Case No. |
| *Plaintiff,* | **COMPLAINT FOR:** |
| *v.* | **1. Violations of the Video Privacy Protection Act, 18 U.S.C. § 1710;** |
| COGNITIVE MEDIA NETWORKS, INC., a Delaware corporation, and VIZIO, INC., a California corporation, | **2. Violations of Cal. Civ. Code § 1799.3;**<br>**3. Violations of Cal. Civ. Code §§ 1750 *et seq.*;**<br>**4. Violations of Cal. Bus. & Prof. Code §§ 17200, *et seq.*;** |
| *Defendants.* | **5. Violations of Cal. Bus. & Prof. Code §§ 17500, *et seq.*;**<br>**6. Fraudulent Omission;**<br>**7. Negligent Omission; and**<br>**8. Unjust Enrichment.** |
| | **DEMAND FOR JURY TRIAL** |
| | **CLASS ACTION** |

Plaintiff Palma Reed ("Plaintiff" or "Reed") brings this class action complaint ("Complaint") against Defendants Cognitive Media Networks, Inc. ("Cognitive") and Vizio, Inc., ("Vizio") (together, "Defendants")[1] based on their inclusion of tracking software on their high-definition and internet connected televisions ("Smart TVs"). Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## NATURE OF THE ACTION

1.      Vizio is one of the leading manufacturers, distributors, and sellers of Smart TVs, selling millions per year. The Smart TVs Vizio markets offer consumers the ability to watch traditional television via cable or antenna, to connect devices such as Blu-ray or DVD players, and to connect to the internet to view movies and shows online and to interact with dozens of applications.

2.      Unfortunately, Vizio partnered with Cognitive to secretly install invasive tracking software on its Smart TVs. Defendants' tracking software monitors the shows and media being watched and continuously reports back to Defendant Cognitive's servers. Worse, Defendants' tracking software regularly performs scans of users' home network to collect identifying information. Defendants use the network-scan information to link collected viewing histories with particular households, and perhaps, even particular people.

3.      Average consumers in the market for Smart TVs lack the requisite technical expertise to uncover Defendants' tracking software on their own. Instead, they rely on Defendants to truthfully and transparently disclose the inclusion of the tracking software. They didn't.

4.      Rather, Defendants "opted in" hundreds of thousands of consumers into their invasive monitoring program. As such, and because Defendants did not disclose the existence of (or obtain consent to use) their tracking software, hundreds of consumers have been harmed because

---

[1]      As alleged more fully below, Defendants acted jointly in the installation and operation of their tracking software. Moreover, Defendant Vizio is the parent company of Cognitive. As such, where referring to "Defendants" collectively, Plaintiff alleges the same facts against Vizio and Cognitive unless otherwise specified. Every reference to "Defendants" shall be construed to include all Defendants jointly and acting in concert, unless a particular Defendant is identified by name.

1    they bought Vizio Smart TVs that invade their privacy and surreptitiously track their activities.

2        5.    Accordingly, this putative class action lawsuit seeks (i) to prevent Defendants from

3    continuing to operate their Smart TV tracking software, and (ii) actual damages for those who

4    purchased Vizio Smart TVs.

5                                **PARTIES**

6        6.    Plaintiff Palma Reed is a natural person and citizen of the State of California.

7        7.    Defendant Cognitive Media Networks, Inc., is a California corporation with its

8    principal place of business located at 1663 Mission Street, San Francisco, California 94103.

9    Cognitive does business throughout the United States and the State of California, including in this

10   District.

11       8.    Defendant Vizio, Inc., is a California corporation with its principal place of business

12   located at 39 Tesla, Irvine, California 92618. Vizio does business throughout the United States and

13   the State of California, including in this District.

14                          **JURISDICTION AND VENUE**

15       9.    This Court has jurisdiction over the subject matter of this action pursuant to 28

16   U.S.C. § 1331 as this action arises under the VPPA, which is a federal statute. Furthermore, the

17   Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (i) at least one

18   member of the Class is a citizen of a different state than the Defendants, (ii) the amount in

19   controversy exceeds $5,000,000, exclusive of interests and costs, and (iii) none of the exceptions

20   under that subsection apply to this action.

21       10.   This Court has personal jurisdiction over Defendants because Defendants conduct

22   business in California, are headquartered in California, and because the events giving rise to this

23   lawsuit occurred, in substantial part, in California.

24       11.   Venue is proper in the United States District Court for the Northern District of

25   California pursuant to 28 U.S.C. § 1391(b) because Defendant Cognitive maintain its headquarters

26   in this District, and Defendant Vizio conducts significant business in this District.

27

28

**CLASS ACTION COMPLAINT**                    3

**INTRADISTRICT ASSIGNMENT**

12.     Pursuant to Civil Local Rule 3-2(e), this case shall be assigned to the San Francisco Division.

**FACTUAL BACKGROUND**

**I.      An Introduction to Defendants and the Vizio Smart TVs**

13.     Defendant Cognitive Media Networks, Inc., is an advertising company that provides "Automatic Content Recognition" software for televisions with integrated internet capabilities (i.e., Smart TVs). Cognitive's software is used to determine what viewers are watching in real-time. The video viewing habits collected through Cognitive's software is ultimately provided to third-party advertisers and content providers that aim to display custom and targeted advertisements to consumers.

14.     Defendant Vizio is a leading manufacturer of Smart TVs. With over three billion dollars in annual revenues, Vizio has captured approximately 35% of the Smart TV market in the United States.[2] Vizio has partnered with Cognitive to use its content-recognition software and, in August of 2015, Vizio purchased a controlling stake in Cognitive for approximately $50 million.[3]

15.     As is expected, Vizio's televisions allow consumers to watch visual content in myriad ways. Each Smart TV is equipped with a variety of input options that are designed to accept video content, including HDMI connections and coaxial (i.e., cable TV or antenna) connectors.

16.     Vizio's Smart TVs expand on traditional television functionality and include internet connectivity through wireless networking ("Wifi"). Defendant Vizio designed its Smart TVs to utilize internet access through its Vizio Internet App and Vizio Internet App Plus ("VIA" and "VIA Plus", respectively) software services. With VIA and VIA Plus, Defendant Vizio provides a means for consumers to watch movies and TV shows, listen to music, get weather and news information, and access other applications, all on demand.

17.     In a recent public filing, Vizio states that it "believes that our platform [i.e., the

---

[2]     Vizio, Inc., *Prospectus* (*Form S-1*), at 19 (October 22, 2015) ("Prospectus"). Excerpts of the Prospectus are attached hereto as Exhibit A.
[3]     *Id.* at 31.

Smart TV platform], which enables ease of discovery and access to digital content for television viewers, creates the opportunity to deliver and monetize additional services relating to [the video on demand] market."[4]



(**Figure 1**, showing Vizio's Smart TV functionality that is displayed on its TV's packaging.)

18.     As Figure 1 shows, Vizio pre-installs many video (and audio) applications on its Smart TVs, including Netflix, YouTube, and Amazon Instant Video. Absent the applications provided by Vizio consumers would have to purchase additional devices to view videos from those services.

19.     The remote that ships with Vizio Smart TVs also includes shortcuts to access certain applications provided by Vizio, such as Amazon Instant Video and Netflix. *See* Figure 2, on the next page.

---

[4]     *Id.* at 13.



(**Figure 2.**)

20.     Indeed, consumers pay a premium for access to Vizio's Smart TV functionality and expect (and paid for) continued access to the videos and services offered through the Smart TV functionality. Unfortunately, Vizio and Cognitive partnered to pre-install "Automatic Content Recognition" software (the "Tracking Software") on all Vizio-branded Smart TVs without first obtaining consumers' consent.

**II.     Defendants Secretly Monitor What Consumers Watch and Scan Home Networks for Identifying Information.**

21.     A detailed analysis of Defendants' Tracking Software reveals that it monitors, in real time, what consumers are watching, scans home networks to capture consumers' identifying information, and reports back to servers owned and operated by Cognitive. Defendants then disclose the collected information to third-party data brokers and advertisers. At no time, however, do Defendants disclose their tracking activities, nor do they ever obtain consent. Instead, they automatically opt-in everyone into their invasive monitoring program.

**A.     Defendants' Tracking Software monitors what consumers are watching.**

22.     As introduced above, Defendants worked together to pre-install the Tracking Software on millions of Vizio branded Smart TVs. A technical inspection of the network traffic reveals that the Smart TVs are communicating with Defendant Cognitive's servers. But because Defendants' programmed the Tracking Software to use encryption, the contents of those

1  communications were obfuscated and unknown. In recent SEC filing, however, Defendant Vizio

2  admitted that the encrypted communications contain particularized details of what consumers are

3  watching.

4      23.     Through the user of an interception proxy—a computer forensics analysis tool—the

5  communications between a Vizio Smart TV and Defendant Cognitive's servers can be identified.

6  <u>Figure 3</u> is a screenshot of the network traffic captured from a Vizio Smart TV with the Tracking

7  Software installed. There, the Smart TV (identifiable by its IP address of 192.168.1.41) regularly

8  communicates with "control.tvinteractive.tv" (identifiable by its IP address of 54.235.185.119),

9  which is a webserver owned and operated by Defendant Cognitive[5] and over which Defendant

10 Vizio has ultimate control. But although it's clear the Smart TV is communicating with Defendants,

11 the contents of the communications are encrypted and undecipherable.



12

13

14

15

16

17

18

19 (**Figure 3**, showing encrypted communications highlighted in black.)

20      24.     Recently, however, Defendant Vizio revealed in its SEC filings that these encrypted

21 communications contain "most content displayed on [Vizio Smart TV] screens, including content

22 from cable and satellite providers, streaming devices and gaming consoles."[6] Defendant goes on to

23 ──────────────────────
   [5]     *Free online network tools - traceroute, nslookup, dig, whois lookup, ping - IPv6*,

24 http://centralops.net/co/DomainDossier.aspx?addr=control.tvinteractive.tv&dom_dns=1&dom_who
   is=1&net_whois=1 (last visited Nov. 13, 2015) (reporting the following administrator of

25 control.tvinteractive.tv as: Registry Admin Name: Zeev Neumeier; Admin Organization: Cognitive
   Media Networks Inc.; Admin Street: 1663 Mission st; Admin Street: Suite 520; Admin City: San

26 Francisco; Admin State/Province: California; Admin Postal Code: 94103; Admin Country: United
   States.)

27 [6]     Prospectus, at 10.

28

state that it collects "up to 100 billion viewing points daily" about "highly specific viewing data."[7]

25.     Indeed, the information Defendants collect is specific enough to determine what show or movie is being watched and even, what video game is being played. Specifically, Vizio states that it:

> collect[s] meaningful viewing behavior data by matching attributes of content displayed on the screens of … connected Smart TVs to our database of existing content, such as movies, TV shows and games. We must continue to develop and update this database and to match the content in this database to content displayed on [Smart TVs]. The process of developing this database is ongoing and incomplete, particularly with respect to content broadcast by local television stations. Delays in developing this database of content may decrease the value of our [Tracking Software] data services.[8]

**B.     Defendants' Tracking Software conducts invasive scans of consumers' home networks.**

26.     In addition to monitoring video viewing activity, Defendants programmed their Tracking Software to continuously scan consumers' home computer networks. Defendants programmed the Tracking Software to scan consumers' home networks to capture information that can be used to identify the people whose viewing activity was captured. That is, although Defendants know *someone* is watching a particular show or movie, they require additional information to assign the viewing information to a specific person.

27.     Using an interception proxy once more, Defendants' Tracking Software is revealed. Figure 4 shows a portion of the Tracking Software's scan for each and every device connected to the consumer's home network. In the selected portion shown in Figure 4, the Tracking Software is scanning for a device with the IP address of 192.168.1.38.

---

[7]     *Id.* at 17.
[8]     *Id.* at 46.

(**Figure 4.**)

28.     Through the scan, Defendants' Tracking Software obtains information about a particular device. Figure 5 shows the results of one such scan. There, the Tracking Software scanned for a device with an IP address of 192.168.1.70 and obtained detailed information specific to that device.



(**Figure 5.**)

29.     Indeed, Figure 6 shows just some of the details Defendants' Tracking Software obtained about just *one* device:

(**Figure 6.**)

30.     As can be seen, Defendants' Tracking Software obtains products' names and model numbers along with potentially sensitive data as product serial numbers and device identifiers. Beyond that, Defendants' Tracking Software obtains computer names (*e.g.*, "Jane Doe's Office Computer"), devices' unique MAC addresses and details about consumers' Wifi networks.[9] Normally, such information is locked behind consumers' firewalls and home network privacy settings. But by secretly installing their Tracking Software on devices consumers put in their homes and interact with daily, Defendants' have gained access to a trove of detailed information.

---

[9]     A MAC address is the Media Access Control address of network-connected devices that is unique and persistent (*i.e.*, it doesn't change) string of letters and number assigned to a particular device. Companies have tried to collect MAC addresses *en masse* and without authorization to create detailed databases of consumers, their locations, and their habits. *See FTC sanctions phone location tracking company for not allowing customer opt-out*, https://nakedsecurity.sophos.com/2015/04/24/ftc-sanctions-phone-location-tracking-company-for-not-allowing-customer-opt-out/ (last visited Nov. 13, 2015).

**C.     Defendants disclose collected information to third-party data brokers and advertisers.**

31.     In its recent SEC filings, Defendant Vizio admits that it discloses information collected by the Tracking Software to various third parties. Indeed, Vizio explains that it installed the Tracking Software so that it can use "real-time viewing behavior data to deliver more effective, targeted advertising campaigns. … [T]he ability to collect and analyze real-time viewing data will enable measurable and increased return on marketing investment, enhance the value of television advertising, and drive increased television advertising spend."[10]

32.     To facilitate the targeted advertising, Defendants have to know accurate and particular information about consumers. Defendant explains that it compiles the information collected through the Tracking Software and discloses the information data brokers to "enhance" the information. That is, Defendants may know from the Tracking Software that an individual watched *Scandal* on a Thursday at 8:00 pm pacific time with an IP address of 96.90.87.4 and a Wifi router MAC address of 04:bd:88:7a:1c:c1, but they want to know the individual's name, address, and other demographic information.

33.     By contracting with a data broker, Defendant Vizio obtains that data. Vizio sends the information it has to the broker. The broker then matches and links that information to consumers in its database by linking across, for instance, IP address or Wifi router MAC address. The broker may have in its table that Jane Doe, with a home address of 123 Main Street, is linked to a Wifi router with the same MAC address as provided (04:bd:88:71:1c:c1). The broker then appends that information to the data it received and sends the enhanced data back to Vizio.

34.     With the enhanced data, Vizio now knows that it was Jane Doe at 123 Main Street that watched *Scandal* on a Thursday at 8:00 pm pacific time with an IP address of 96.90.87.4 and a Wifi router MAC address of 04:bd:88:7a:1c:c1. Vizio then discloses certain of that information to media and data analytics companies, amongst others.

**D.     Defendants do not obtain consumers' consent to operate the Tracking Software.**

35.     Despite invasively monitoring and tracking consumers through their Tracking

---

[10]     *Prospectus*, at 31.

1  Software, Defendants never obtain consent nor do they disclose to consumers that the Tracking

2  Software is installed on the Smart TVs. Instead, Defendants automatically "opts in" everyone.

3        36.      In its SEC filings, Vizio acknowledges that "some individuals may be reluctant or

4  unwilling to connect to the Internet through our Smart TVs because they have concerns regarding

5  the risks associated with data privacy and security. If the wider public perceives data privacy or

6  security concerns with respect to our Smart TVs, this could negatively impact the growth potential

7  for the net sales of our Smart TVs and our Inscape data services."

8        37.      Nevertheless, Defendants went to great lengths to conceal that the Smart TVs have

9  the Tracking Software installed. For example, Defendants do not disclose the existence of the

10  Tracking Software during a Vizio Smart TV's setup, in advertising, or on the products' packaging.

11  Nor do Defendants alert consumers while they're being monitored about the Tracking Software or

12  require consumers to agree to any terms or privacy policy relevant to the Tracking Software.

13       38.      Instead, Defendants hid references about its Tracking Software in obscure settings

14  menus, knowing that no consumers would uncover them. Indeed, Defendants hid their privacy

15  policy that purportedly governs how the Tracking Software collects data and how Defendants use

16  the data deep in the Smart TVs' menus. Figures 7 through 10 show the steps needed to access that

17  privacy policy.



(**Figure 7**, showing navigation to "System.")



(**Figure 8,** showing navigation to "Reset & Admin.")



(**Figure 9**, showing navigation to "VIZIO Privacy Policy" described as "the VIZIO Terms of Service.")

1
2
3
4
5
6
7
8
9
10



11      (**Figure 10**, showing the "VIZIO Privacy Policy" as viewable on a Vizio Smart TV.)

12      39.      As the figures show, even if a consumer somehow stumbled upon the privacy policy,

13  Defendants intentionally obstruct consumers' ability to read and comprehend (let alone consent to)

14  what Defendants' Tracking Software does. As <u>Figure 10</u> demonstrates, Defendants restricted the

15  privacy policy to be viewable on only a small fraction of the total screen, requiring consumers to

16  stand inches away from their TVs to view complex and dense legal jargon (that is displayed in

17  white text against a light blue background).

18      40.      Incredibly, and despite selling televisions with as much as 120-inches of ultra-high-

19  definition television space that they could use, Defendants attempt to further conceal their Tracking

20  Software by making it impossible for consumers to read the privacy policy.

21
22
23
24
25
26
27
28



(**Figure 11.**)

41.     Moreover, while Defendants included a supposed "opt-out" feature for the Tracking Software, they do not provide consumers with any information about what the feature that is "on" by default does. As Figure 11 shows, Defendants call the Tracking Software "Smart Interactivity," set the default setting to "On," and only state that it purportedly "Enables program offers and suggestions." Notably, it fails to mention that "Smart Interactivity" tracks viewing habits, performs invasive scans of consumers' home networks, and sends collected data back to Defendants in real time.

## III.    Plaintiff Reed's Experience.

42.     On December 11, 2012, Plaintiff purchased a Vizio E320i Smart TV from a Costco near her home in Los Angeles, California for $324.06, including an $8.00 E-Waste Fee and 8.75% tax. On December 28, 2012, Plaintiff purchased a Vizio M420SL Smart TV from a Sam's Club near her home in Los Angeles, California for $606.83, including a $10.00 E-Waste Fee and 8.75% tax.

43.     Since purchasing the televisions, Plaintiff Reed has had both Smart TVs connected to her home wireless network and has used the Smart TVs to watch shows and movies, including through connected applications. At no time did she consent to the operation of Defendants' Tracking Software. And, at no time did Defendants disclose to her that the Smart TVs had Defendants' Tracking Software installed and operating.

44.     Had she known that Defendants installed Tracking Software on her television she would not have purchased the Smart TVs. Accordingly, Plaintiff has suffered damages as the result of Defendants' installation of and operation of their Tracking Software.

## CLASS ALLEGATIONS

45.     **Class Definition:** Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of herself and a Class of similarly situated individuals defined as follows:

> All individuals in the United States that purchased a Vizio Smart TV with Defendants' Tracking Software installed.

The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

46.     **Numerosity**: The exact number of members of the Class is unknown and is not available to Plaintiff at this time, but individual joinder in this case is impracticable. The Class likely consists of hundreds of thousands of individuals. Class members can be easily identified through Defendants' or their agents' records.

47.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include but are not limited to the following:

a)     Whether Defendants disclosed that their Tracking Software was installed on the Vizio Smart TVs;

b)     Whether Defendant Vizio unlawfully disclosed and continues to unlawfully disclose consumers' personally identifiable information, including their video

viewing records, in violation of 18 U.S.C. § 2710(b);

c)   Whether Defendant Vizio unlawfully disclosed and continues to unlawfully disclose consumers' personally information or records, including records of their video viewing history, in violation of Cal. Civ. Code § 1799.3.

d)   Whether Defendant Vizio's disclosures were committed knowingly;

e)   Whether Defendants' conduct described herein was willful;

f)   Whether Defendants' conduct described herein constitutes a violation of California's Consumers Legal Remedies Act (Cal. Civ. Code. §§ 1750, *et seq.*);

g)   Whether Defendants' conduct described herein constitutes a violation of the Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*);

h)   Whether Defendant Vizio's conduct described herein constitutes a violation of the False Advertising Law (Cal. Bus. & Prof. Code §§ 17500, *et seq.*);

i)   Whether Defendant Vizio's conduct described herein constitutes fraudulent omission;

j)   Whether Defendant Vizio's conduct described herein constitutes negligent omission; and,

k)   Whether Defendants' conduct has caused them to be unjustly enriched.

48.   **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the Class sustained damages as a result of Defendants' uniform wrongful conduct during transactions with Plaintiff and the Class.

49.   **Adequate Representation**: Plaintiff has and will continue to fairly and adequately represent and protect the interests of the Class, and she has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources to do so. Neither Plaintiff nor her counsel has any interest adverse to those of the

other members of the Class.

50.     **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' policies challenged herein apply and affect the members of the Class uniformly and Plaintiff's challenge of these policies hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

51.     **Superiority**: This class action is also appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

52.     Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned through additional investigation and in discovery.

**FIRST CAUSE OF ACTION**
**Violations of the Video Privacy Protection Act**
**18 U.S.C. § 2710**
**(On Behalf of Plaintiff and the Class Against Defendant Vizio)**

53.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

54.     Defendant Vizio is a "video tape service provider[]" as defined by the VPPA because

it "engage[s] in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery or prerecorded video cassette tapes or similar audio visual materials," 18 U.S.C. § 2710(a)(4), by delivering videos (*i.e.*, "similar audio visual materials" under the VPPA's definition) to consumers through its internet connected Smart TVs.

55.     Specifically, and as detailed in Section I, Vizio facilitates the transmission of specific video titles to be made to consumers through its VIA and VIA Plus services that allows consumers to watch movies and shows, listen to music, and access applications on demand.

56.     Plaintiff is a "consumer" as defined by the VPPA because she is a "renter, purchaser, or subscriber of goods or services from a video tape service provider," namely Defendant Vizio. 18 U.S.C. § 2710(a)(1). Specifically, Plaintiff purchased two televisions manufactured, marketed, and distributed by Defendant Vizio. Moreover, Plaintiff paid a premium for Defendant Vizio's "smart TV" functionality. As such, she paid for (and Defendant Vizio intended to create) a continuing and ongoing relationship between herself and Defendant Vizio for access to premium "smart TV" features, including access to movies and television shows on demand.

57.     Plaintiff has viewed many movies and television shows on her Smart TVs. During these occasions, Defendants' Tracking Software collected information on the specific movies or shows she was watching, performed a scan of Plaintiff's home network for unique identifiers (*e.g.*, computer names, MAC addresses, product serial numbers), and transmitted the collected information to Defendant Vizio.

58.     Under the VPPA, the term "personally identifiable information" "includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). The definition's usage of the word "includes" means that a more expansive reading of the term was expressly contemplated.

59.     Defendant Vizio has disclosed and continues to disclose Plaintiff's information to third parties. Defendant Vizio first discloses collected personally identifying information ("PII") to third-party data brokers to "enhance" the information with other demographic information about Plaintiff, and then discloses the "enhanced" personally identifying information to advertisers to

1  "generate meaningful revenue."[11]

2  60.  Defendant Vizio's transmissions of Plaintiff's PII to data brokers and advertisers

3  constitutes "knowing[] disclosures" of Plaintiff's "personally identifiable information" to a person

4  as proscribed by the VPPA. 18 U.S.C. § 2710(a)(1).

5  61.  At no time did Plaintiff ever provide Defendant Vizio with any form of consent—

6  either written or otherwise—to collect her PII or to disclose her PII to third parties.

7  62.  Nor were Defendant Vizio's disclosures made in the "ordinary course of business" as

8  the term is defined by the VPPA. In particular, the Defendant Vizio's disclosures to data brokers

9  and advertisers were not necessary for "debt collection activities, order fulfillment, request

10  processing, [or] the transfer of ownership." 18 U.S.C. § 2710(a)(2).

11  63.  As a result of Defendant Vizio's unlawful disclosures, Plaintiff and the Class have

12  had their statutorily defined right to privacy violated. Plaintiff seeks an injunction prohibiting

13  Defendant Vizio from collecting and then releasing her and the Class's PII in the future, as well as

14  the maximum statutory and punitive damages available under the VPPA. 18 U.S.C. § 2710(c).

15
16  **SECOND CAUSE OF ACTION**
**Violations of Cal. Civ. Code § 1799.3**
**(On Behalf of Plaintiff and the Class Against Defendant Vizio)**

17  64.  Plaintiff incorporates by reference the foregoing allegations as if fully set forth

18  herein.

19  65.  California Civil Code § 1799.3(a) provides that "No person providing video

20  recording sales or rental services shall disclose any personal information or the contents of any

21  record, including sales or rental information, which is prepared or maintained by that person, to any

22  person, other than the individual who is the subject of the record, without the written consent of that

23  individual."

24  66.  Defendant Vizio is a "person providing video recording sales or rental services"

25  because it facilitates the sale and rental of videos to consumers through its internet connected Smart

26  TVs.

27  ───────────────────────────────
[11]      Prospectus, at 10.

28

67.     None of the exemptions provided by Cal. Civ. Code § 1799.3 (b) apply.

68.     Defendant Vizio has disclosed and continues to disclose Plaintiff's personal information and the contents of records prepared or maintained by Vizio to third parties. Defendant Vizio first discloses collected personal information and contents of records to third-party data brokers to "enhance" information collected through the Tracking Software with other demographic information about Plaintiff. Defendant Vizio then discloses the "enhanced" personal information and contents of records to advertisers.

69.     At all times Defendant Vizio has acted willfully.

70.     At no time did Plaintiff provide Defendant Vizio with any form of consent allowing it to collect her personal information and viewing records, nor to disclose her personal information and viewing records to third parties.

71.     As a result of Defendant Vizio's unlawful disclosures, Plaintiff and the Class have had their statutorily defined right to privacy violated. Plaintiff seeks an injunction prohibiting Defendant Vizio from collecting and then disclosing her and the Class's personal information in the future, as well as the maximum statutory and punitive damages available under Cal. Civ. Code § 1799.3(c)(1).

**THIRD CAUSE OF ACTION**
**Violations of the Consumers Legal Remedies Act**
**Cal. Civ. Code §§ 1750, *et seq.***
**(On Behalf of Plaintiff and the Class Against Defendants)**

72.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

73.     The Consumers Legal Remedies Act ("CLRA") applies to Defendants' actions and conduct as described herein because it extends to transactions that are intended to result, or which have resulted, in the sale of goods or services to consumers.

74.     Defendants are each a "person" as defined by Cal. Civ. Code § 1761(c).

75.     Plaintiff and each member of the Class are "consumers" as defined by Cal. Civ. Code § 1761(a).

76.     Defendant Vizio's Smart TVs are "goods" within the meaning of Cal. Civ. Code §

1761(a).

77.     As described herein, Defendants have engaged in deceptive practices, unlawful methods of competition, and/or unfair acts as defined by Cal. Civ. Code §§ 1750 *et seq.*, to the detriment of Plaintiff and the Class.

78.     Defendants, acting with knowledge, intentionally and unlawfully brought harm upon Plaintiff and the Class by installing their Tracking Software on Vizio Smart TVs and collecting, without authorization, consumers' viewing habits.

79.     Specifically, by not disclosing that their Tracking Software was installed on the Smart TVs, Defendants violated Cal. Civ. Code § 1750 in at least the following respects:

    a.     In violation of § 1770(5), by representing that the Smart TVs had characteristics, ingredients, uses, benefits, or quantities which they did not have;

    b.     In violation of § 1770(7), by representing that the Smart TVs were of a particular standard, quality, or grade of which they are not; and

    c.     In violation of § 1770(9), by advertising the Smart TVs with the intent not to sell its goods as advertised.

80.     Defendants' unfair or deceptive acts or practices were capable of deceiving a substantial portion of the purchasing public.

81.     Defendants did not disclose facts about their Tracking Software to consumers that purchased the Smart TVs because they knew consumers would not purchase the Smart TVs if they knew of the Tracking Software.

82.     Defendants were under a duty to Plaintiff and the Class to disclose that the Smart TVs contained the Tracking Software because:

    a.     Defendants were in a superior position to know that the Tracking Software was installed on the Smart TVs;

    b.     Plaintiff and the Class could not reasonably have been expected to learn or discover that Defendants included the Tracking Software on the Smart TVs;

      c.     Defendants knew that Plaintiff and the Class members could not reasonably have been expected to learn or discover that Defendants included the Tracking Software on the Smart TVs; and

      d.     Defendants knew that Plaintiff and Class members would not purchase the Smart TVs if they knew of the Tracking Software.

83.     By failing to disclose that the Smart TVs contained the Tracking Software, Defendants have knowingly and intentionally concealed material facts and breached their duty not to do so.

84.     The facts concealed or not disclosed by Defendants to Plaintiff and the Class, including that the Smart TVs contained the Tracking Software, are material in that a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Smart TVs.

85.     Plaintiff and the Class reasonably expected that their televisions would be free from Tracking Software.

86.     The existence of Tracking Software on a television is a material term for the purchase of a television, and a primary reason to not purchase a particular television.

87.     Defendants did not disclose facts about their Tracking Software to consumers that purchased the Smart TVs because they knew consumers, acting reasonably under the circumstances, would not purchase the Smart TVs if they knew of the Tracking Software.

88.     Through the omissions detailed herein, Defendants wrongfully induced Plaintiff and the other members of the Class to purchase the Smart TVs when they otherwise would not have purchased them.

89.     As a direct and proximate result of Defendants' violations of Cal. Civ. Code §§ 1750, *et seq.*, Plaintiff and each Class member have suffered harm in the form of paying monies to purchase the Smart TVs when they otherwise would not have purchased them.

90.     Under Cal. Civ. Code § 1780(a) and (b), Plaintiff, individually and on behalf of the Class, seeks an injunction requiring Defendants to cease and desist the illegal conduct alleged in

1 this Complaint, and all other appropriate remedies for its violations of the CLRA. For the sake of

2 clarity, Plaintiff explicitly disclaims any claim for damages under the CLRA at this time.

3

**FOURTH CAUSE OF ACTION**
**Violations of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200,** *et seq.*
**(On Behalf of Plaintiff and the Class Against Defendants)**

4

5   91. Plaintiff incorporates by reference the foregoing allegations as if fully set forth

6 herein.

7   92. California's Unfair Competition Law ("UCL"), Cal Bus. & Prof. Code §§ 17200, *et*

8 *seq.*, protects both consumers and competitors by promoting fair competition in commercial

9 markets for goods and services.

10

11   93. The UCL prohibits any unlawful, unfair, or fraudulent business act or practice,

12 including the employment of any deception, fraud, false pretense, false promise, misrepresentation,

13 or the concealment, suppression, or omission of any material fact. A business practice need only

14 meet one of the three criteria to be considered unfair competition.

15   94. The specifications of a consumer product is a material term of any transaction

16 because it directly affects a consumer's choice of, or conduct regarding, whether to purchase a

17 product. Any deception or fraud related to the specifications of a product is materially misleading.

18   95. As described herein, Defendants have engaged in deceptive business practices, as

19 defined by the UCL, by installing their Tracking Software on Vizio Smart TVs and collecting,

20 without authorization, consumers' viewing habits.

21   96. Defendants have violated the fraudulent and unfair prongs of the UCL by knowingly

22 installing Tracking Software that collects information on the specific movies or shows being

23 watched and that performs a network scan of home computer networks to capture, amongst other

24 things, the MAC identifiers and names of wireless routers, mobile devices (*e.g.*, smartphones), and

25 computers and then sends the collected information to Defendant Vizio, Inc.

26   97. Defendants did not disclose that the Smart TVs contain the Tracking Software

27 because they knew consumers would not purchase the Smart TVs if they knew of that fact.

28   98. Furthermore, Defendants never sought or obtained consumers' consent to install or

1    operate their Tracking Software on consumers' Smart TVs.

2    99.    As such, Defendants have caused substantial injury to consumers through their

3    fraudulent and unfair conduct described above. The injuries caused by Defendants' fraudulent and

4    unfair conduct are not outweighed by any countervailing benefits to consumers or competition, and

5    the injury is one that consumers themselves could not reasonably have avoided. Defendants knew or

6    had reason to know that Plaintiff and the Class could not have reasonably known or discovered the

7    existence of the Tracking Software.

8    100.    Defendants' fraudulent and unfair conduct occurred during the marketing,

9    distribution, and sale of Smart TVs, and therefore occurred in the course of Defendants' business

10   practices.

11   101.    Defendants' conduct directly and proximately caused Plaintiff and the Class actual

12   monetary damages in the form of the price paid for the Smart TVs.

13   102.    If Defendants had disclosed that their Tracking Software was installed and operating

14   on the Vizio Smart TVs Plaintiff and members of the Class would not have purchased the Smart

15   TVs.

16   103.    Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order (1) requiring

17   Defendants to cease the fraudulent and unfair practices described herein; (2) requiring Defendants

18   to restore to Plaintiff and each Class member any money acquired by means of unfair competition

19   (restitution); and, (3) awarding reasonable costs and attorneys' fees pursuant to Cal. Code Civ. Proc.

20   § 1021.5.

21
                        **FIFTH CAUSE OF ACTION**
                    **Violation of False Advertising Law**
22                  **Cal. Bus. & Prof. Code §§ 17500 *et seq.***
              **(On Behalf of Plaintiff and the Class Against Defendant Vizio)**
23
24   104.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

     105.    California's False and Misleading Advertising Law ("FAL") prohibits corporations
25
     from intentionally disseminating advertisements for products or services that are "unfair, deceptive,
26
     untrue, or misleading." Cal. Bus. & Prof. Code §17500.
27
     106.    As detailed throughout this Complaint, Defendant Vizio has disseminated unfair,
28

1   deceptive, untrue, and misleading advertisements because it does not disclose that its Smart TVs

2   contain the Tracking Software. Defendant Vizio did not disclose that fact because it knew

3   consumers would not purchase its Smart TVs if they knew it contained the Tracking Software.

4        107.    A reasonable person is likely to be deceived by Defendant Vizio's omissions.

5        108.    Defendant Vizio knew or should have known when creating and disseminating

6   advertisements without disclosing that the Smart TVs contain the Tracking Software that they

7   contained materially false and misleading information.

8        109.    Defendant's conduct directly and proximately caused Plaintiff and the Class actual

9   monetary damages in the form of the price paid for the Smart TVs.

10        110.    Plaintiff seeks an order (1) requiring Defendant to cease the false advertising

11   practices described herein; (2) requiring Defendant to restore to Class members any money acquired

12   by means of false advertising (restitution); and, (3) awarding reasonable costs and attorneys' fees

13   pursuant to Cal. Code Civ. Proc. § 1021.5.

14                     **SIXTH CAUSE OF ACTION**
                       **Fraudulent Omission**

15        **(On Behalf of Plaintiff and the Class Against Defendant Vizio)**

16        111.    Plaintiff incorporates by reference the foregoing allegations as if fully stated herein.

17        112.    As described with particularity herein, Defendant Vizio has concealed or suppressed

18   a material fact. Specifically, Defendant Vizio concealed the fact that its Smart TVs contain

19   Tracking Software that collects information on the specific movies or shows being watched and that

20   performs a network scan of home computer networks to capture, amongst other things, the MAC

21   identifiers and names of wireless routers, mobile devices (*e.g.*, smartphones), and computers.

22        113.    Defendant Vizio was under a duty to Plaintiff and the Class to disclose that the Smart

23   TVs contained the Tracking Software because:

24               a.    Defendant was in a superior position to know that the Tracking Software was

25                   installed on its Smart TVs;

26               b.    Plaintiff and the Class could not reasonably have been expected to learn or

27                   discover that Defendant included the Tracking Software on its Smart TVs;

28

    c.    Defendant knew that Plaintiff and the Class members could not reasonably have been expected to learn or discover that Defendant included the Tracking Software on its Smart TVs; and

    d.    Defendant knew that Plaintiff and Class members would not have purchased the Smart TVs if it disclosed the Tracking Software.

114.    Defendant intentionally concealed or suppressed information about the Tracking Software with intent to defraud Plaintiff and members of the Class. Specifically, Defendant knew that Plaintiff and Class members would not have purchased the Smart TVs if it disclosed the Tracking Software. Moreover, Defendant knew that, absent the Tracking Software, it would have to pay Plaintiff and members of the Class for access to their video viewing history.

115.    Plaintiff and members of the Class did not know that the Smart TVs they purchased contained the Tracking Software. Had they known, they would not have purchased the Smart TVs.

116.    Defendant Vizio's conduct directly and proximately caused Plaintiff and the Class actual monetary damages in the form of the price paid for the Smart TVs.

117.    Plaintiff, on behalf of herself and the Class, seeks damages from Defendant Vizio's unlawful conduct.

**SEVENTH CAUSE OF ACTION**
**Negligent Omission**
**(On Behalf of Plaintiff and the Class Against Defendant Vizio)**

118.    Plaintiff incorporates by reference the foregoing allegations.

119.    As described with particularity herein, Defendant Vizio has negligently concealed or suppressed a material fact. Specifically, Defendant Vizio negligently concealed the fact that its Smart TVs contain Tracking Software that collects information on the specific movies or shows being watched and that performs a network scan of home computer networks to capture, amongst other things, the MAC identifiers and names of wireless routers, mobile devices (*e.g.*, smartphones), and computers

120.    Defendant Vizio was under a duty to Plaintiff and the Class to disclose that the Smart TVs contained the Tracking Software because:

a.   Defendant was in a superior position to know that the Tracking Software was installed on its Smart TVs;

b.   Plaintiff and the Class could not reasonably have been expected to learn or discover that Defendant included the Tracking Software on its Smart TVs;

c.   Defendant should have known that Plaintiff and the Class members could not reasonably have been expected to learn or discover that Defendant included the Tracking Software on its Smart TVs; and

d.   Defendant should have known that Plaintiff and Class members would not have purchased the Smart TVs if it disclosed the Tracking Software.

121.   Defendant negligently concealed or suppressed information about the Tracking Software. Specifically, Defendant should have known that Plaintiff and Class members would not have purchased the Smart TVs if it disclosed the Tracking Software or that it would have had to pay for access to their video viewing history.

122.   Plaintiff and members of the Class did not know that the Smart TVs they purchased contained the Tracking Software. Had they known, they would not have purchased the Smart TVs.

123.   Defendant Vizio's conduct directly and proximately caused Plaintiff and the Class actual monetary damages in the form of the price paid for the Smart TVs.

124.   Plaintiff, on behalf of herself and the Class, seeks damages from Defendant Vizio's unlawful conduct.

**EIGHTH CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class Against Defendants)**

125.   Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

126.   Plaintiff and the Class have conferred a benefit upon Defendants in the form of their personal video viewing history. Absent the use of their unauthorized Tracking Software, Defendants would have had to pay Plaintiff and each member of the Class money in exchange for their video viewing history. Indeed, the leading company that collects and analyzes consumer video viewing

habits, The Nielsen Company, pays consumers (typically $10) for one-time access to their video viewing records.[12]

127.    Defendants appreciate and/or have knowledge of the benefits conferred upon them by Plaintiff and the Class.

128.    Under principles of equity and good conscience, Defendants should not be permitted to retain the benefit obtained from Plaintiff and the members of the Class, which Defendants have unjustly obtained as a result of its unauthorized Tracking Software.

129.    Accordingly, Plaintiff and the Class seek full disgorgement and restitution of any money Defendants have received or generated as a result of the unlawful and/or wrongful conduct alleged herein.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Palma Reed on behalf of herself and the Class respectfully requests that the Court enter an order:

A.    Certifying this case as a class action on behalf of the Class defined above, appointing Palma Reed as representative of the Class, and appointing his counsel as class counsel;

B.    Declaring that Defendant Vizio's actions, as set out above, violate the VPPA (18 U.S.C. § 2710), Cal. Civ. Code § 1799.3, and the FAL (Cal. Bus. & Prof. Code §§ 17500, *et seq.*), and constitute fraudulent omission and negligent omission;

C.    Declaring that Defendants' actions, as set out above, violate the CLRA (Cal. Civ. Code §§ 1750, *et seq.*); UCL (Cal. Bus. & Prof. Code §§ 17200 *et seq.*); and have resulted in them being unjustly enriched;

D.    Awarding damages, including statutory and punitive damages where applicable, to

---

[12] *Nielsen TV Diary | Frequently Asked Questions*, tvdiary.nielsen.com/content/panel/tvdiary7-en-feb2014/faq.html (last visited Nov. 13, 2015) (describing how "The people who plan and schedule television programs want to know what households like yours are watching. Unlike a newspaper or magazine, where the copies sold can be counted, there is no simple way to know how many people are watching a certain television program. Nielsen estimates the audience of TV programs with the information gathered from households like yours," and that "[t]he money enclosed with the diary is a thank you in advance for filling out and returning your diary.  We truly appreciate your participation.").

1   Plaintiff and the Class in an amount to be determined at trial;

2       E.      Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys'

3   fees;

4       F.      Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent

5   allowable;

6       G.      Awarding such other injunctive and declaratory relief as is necessary to protect the

7   interests of Plaintiff and the Class; and

8       H.      Awarding such other and further relief as the Court deems reasonable and just.

9                              **DEMAND FOR JURY TRIAL**

10      Plaintiff demands a trial by jury for all issues so triable.

11                                      Respectfully submitted,

12  Dated:  November 13, 2015                **PALMA REED**, individually and on behalf of all
                                             others similarly situated,
13

14                                          By:  /s/ Samuel M. Lasser
                                                 One of Plaintiff's Attorneys
15
                                            Samuel M. Lasser (SBN – 252754)
16                                          slasser@edelson.com
                                            Rafey S. Balabanian*
17                                          rbalabanian@edelson.com
                                            Alicia E. Hwang*
18                                          ahwang@edelson.com
                                            EDELSON PC
19                                          329 Bryant Street
                                            San Francisco, California 94107
20                                          Tel: 415.212.9300
                                            Fax: 415.373.9435
21
                                            Christopher L. Dore*
22                                          cdore@edelson.com
                                            Amir C. Missaghi*
23                                          amissaghi@edelson.com
                                            EDELSON PC
24                                          350 North LaSalle Street, Suite 1300
                                            Chicago, Illinois 60654
25                                          Tel: 312.589.6370
                                            Fax: 312.589.6378
26
                                            *Pro hac vice admission to be sought
27                                          Attorneys for Plaintiff and the Putative Class

28